McMULLIN et al. v. BLACKBURN.

(District Court, N. D. California. December 11, 1893.)

No. 10,467.

1. ADMIRALTY JURISDICTION—SALVAGE—COSALVORS.
Admiralty has jurisdiction of a suit by a salvor against his cosalvor to recover a share in the salvage money, the whole having been received by the latter under a decree enforcing a salvage contract, and the libelant having failed to intervene in that suit, so that the value of his services and the compensation therefor remain undetermined.

2. SALVAGE SUITS—DELAY IN PRESENTING CLAIMS.
Promptness should be required in presenting salvage claims, and a delay of nearly a year in suing a cosalvor for a share in the salvage money received by him will be considered in determining the amount of the award.

In Admiralty. Libel by Robert McMullin, Jacob Koop, and Frank Wackrow against D. O. Blackburn to recover shares in salvage money received by the latter. Decree for libelants.

W. H. Hutton, for libelants.
Geo. W. Towle, Jr., for respondent.

MORROW, District Judge. In the month of April, 1891, the master of the steamer Montserrat found the steamer Wellington in a disabled condition on the Pacific ocean, about 72 miles south-

west from the mouth of the Columbia river. After some negotiations, a contract was entered into between the master of the steamer Wellington and the master of the steamer Montserrat for the towage of the former vessel to San Francisco, a distance of about 500 miles, for the sum of $15,000. The service was undertaken and completed, the ships arriving in the harbor of San Francisco at the expiration of about four days. Upon the failure of the owner of the steamer Wellington to pay the sum agreed upon for the towage service, D. O. Blackburn, the master of the steamer Montserrat, filed a libel in this court to recover the said sum of $15,000. On the hearing of the case the owner of the Wellington resisted the action on the ground that the amount claimed was in excess of what the service was reasonably worth. The court determined that while the sum of $15,000, agreed upon between the masters, was too large for the service rendered, it was not so exorbitant as to justify setting aside the contract, and a decree was accordingly entered for the amount claimed by the libelant in full for the service rendered.

In November, 1892, Robert McMullin, Jacob Koop, and Frank Wackrow, members of the crew of the steamer Montserrat, commenced this action to recover their shares of the $15,000 recovered by D. O. Blackburn, alleging that they were employed as seamen on the steamer Montserrat at the time the towage service was rendered the steamer Wellington; that they assisted in bringing the latter vessel to the port of San Francisco, and in doing so performed services for which they had not been hired on board the Montserrat. The services rendered the steamer Wellington were salvage services. The Wellington, 48 Fed. 475; The Emulous, 1 Sumn. 207; The A. D. Patchin, 1 Blatchf. 420; The Saragossa, 1 Ben. 551; The Emily B. Souder, 7 Ben. 555. The libelants were entitled to participate in the award made in the Wellington Case, but, having failed to intervene for their interests, the question arises, can they now maintain an action in this court against D. O. Blackburn, a cosalvor, to recover from him their proportionate shares of the salvage award? In Waterbury v. Myrick, Blatchf. & H. 34, the court assumed, for the purpose of that case, "that an action in personam will lie by one salvor against a cosalvor to recover a proportionate share of the salvage compensation, when the whole is received by the latter, and he withholds the share of the former." The question of jurisdiction was, however, not raised, and what the court assumed was therefore in the nature of dictum.

The first reported case in this country, where the question was directly involved, is that of The Centurion, Ware, 477, decided by Judge Ware in 1839. The court, in this case, distinctly affirms the right of the salvor to sue a cosalvor in a court of admiralty for a proportionate share of salvage award, where the latter has received the whole award. The court regards such an action as, to all intents and purposes, a salvage suit. In this case the libelant was a sailor who assisted in performing a salvage service. Arbitrators fixed upon the amount of compensation, and the whole award was paid over to the master. The sailor sued the master

for his share, which he recovered. The court, in holding that the jurisdiction of admiralty attached to libels of this character, drew a distinction between the case where "the libelant does not demand a specific sum which the master is alleged to have received to his use," and where he has been decreed a specific sum, which has been paid to another, and by the latter converted to his own use. The court says:

"He claims generally an unliquidated sum as a reward for his services as a salvor, the amount to be ascertained by a decree of the court. The libel is founded, therefore, strictly upon the maritime service, a consideration over which the court has an undisputed jurisdiction. The question at issue is whether he performed such services as entitle him to a reward as a salvor or not."

In Studley v. Baker, 2 Low. 205, decided by Judge Lowell in 1873, the question is very fully considered and the authorities reviewed. The court stated the conclusion reached:

"That a court of admiralty has such jurisdiction, I cannot entertain the slightest doubt. The liability of the defendants does not rest on a promise, express or implied, so much as the duty of the owners to pay the men their wages, and whatever else is due them by virtue of their employment in the vessel and of the incidents of the voyage. The amount is not liquidated, and can be conveniently ascertained only by a court of admiralty, which distributes salvage according to its own views of propriety and justice. The money, in this case, was taken by the defendants upon a trust which may sometimes be enforceable at law or in equity, and always in admiralty. Indeed, a suit for distribution of salvage is really a salvage suit, and is always so denominated by good pleaders."

Roff v. Wass, 2 Sawy. 389, decided by Judge Deady in 1873, and affirmed by Judge Sawyer on appeal, (Id. 538,) is an open recognition in this circuit of the right to maintain such an action. Judge Deady relied upon the authority of The Centurion. Here, the master and owners received, in settlement of salvage services, from the parties for whose benefit the service had been rendered, the sum of $5,000 therefor. The libelants sued the master and owners to recover the proportionate share of the $5,000, alleging that they had received no portion of said money paid for such salvage service, and that the master and owners had wrongfully converted the same to their own use. Exceptions were filed to the libel, and, among others, the objection was made that the court did not have jurisdiction. But the court overruled this exception, treating it as immaterial. It was maintained by the respondents that the libelants should have proceeded against the barkentine and her owners for their share of the salvage. The learned judge disposed of this argument as follows:

"Admitting the libelants might maintain a suit against the barkentine and her owners for their shares of the salvage earned in rescuing her from destruction, notwithstanding the payment of the $5,000 to respondents, it does not follow that they are bound, or ought, under the circumstances, so to do. If, as is alleged, the matter has been adjusted with the respondents, and they have received a compensation for the whole service, the libelants may affirm such settlement and payment, so far as they are concerned, and recover their share of it as money had and received to their use; and this suit is such an affirmance."

And further on he says:

"It is clear, both upon reason and authority, that the master of a salvage vessel, in adjusting and receiving compensation for salvage service, is acting as agent for the owners and crew, and is responsible to them for their respective shares thereof; and where, as in this case, it happens that the compensation is received by the owners of the salving ship in the first instance, the result is the same,—they are liable to the crew for their respective portions of the amount received."

McConnochie v. Kerr, 9 Fed. 50, decided by Judge Brown in 1881, is the next case. The libelants sued to recover their share of a sum of money alleged to have been paid to the master and owner of the salving vessel by those for whose benefit the service had been rendered. The court recognized the right of the libelants to maintain the suit in a court of admiralty in the following language:

"If the money in question was paid to and received by Kerr as salvage compensation, and for the entire service, as substantially alleged in the libel, I have no doubt of the jurisdiction of this court to compel contribution to the libelants in this action. The receipt of the whole compensation as salvage would necessarily import its receipt for the benefit of all other cosalvors interested in the same service; and the determination and apportionment of the several interests of cosalvors in the gross sum received by one of them would present questions peculiarly within the cognizance of a court of admiralty. Its jurisdiction has been frequently exercised in such cases in this country during the last half century. The Centurion, Ware, 477; Roff v. Wass, 2 Sawy. 538; Waterbury v. Myrick, Blatchf. & H. 34. Numerous other instances of this kind are cited by Judge Lowell in the careful opinion given by him in the case of Studley v. Baker, 2 Low. 205, which renders further references here unnecessary."

But the court declined to grant such relief in this particular case on the ground that the amount awarded by an arbitration was intended and understood by the parties to the award as compensation for a towage service, not as remuneration for any salvage service. The libelants had an ample remedy against the Colon for their salvage services, as they were not concerned or considered in the award made by the arbitrators; but the court observed that, if the arbitrators had intended that the award should be for the benefit of all concerned, (master, owners, and crew,) there would be no question as to the right of any cosalvor, whose share was withheld from him, to proceed in a court of admiralty to recover his pro rata of the award. The case was appealed to the circuit court. 15 Fed. 545, Wallace, J., reversed the decision of Judge Brown, but in doing so he in no wise impaired the position taken by Judge Brown as to the right of a cosalvor to sue. On the contrary, he distinctly affirms the correctness of that proposition. He says:

"If the payment was received as salvage compensation for the entire service rendered by the Pomona, the libelants are entitled to recover. As it is tersely stated by the learned district judge in his opinion, 'the receipt of the whole compensation as salvage would necessarily import its receipt for the benefit of all the other cosalvors interested in the same service.'"

But he reversed the decision of the district judge as to the effect of the award made by the arbitrators,—that is, whether it was intended merely as the payment to the owners and master alone for a towage service, or whether it was designed and considered as a settlement in full for the whole salvage service. Judge Wallace held

that Judge Brown erred in regarding the award by the arbitrators as a payment for a towage service. He held that the award was intended and regarded as a payment for the entire salvage service. Judge Nelson, in The Olive Mount, 50 Fed. 563, assents to the above doctrine.

It has been established that actions involving considerations of salvage services are peculiarly within the province of the admiralty courts, and such a jurisdiction necessarily includes proceedings for the distribution of the salvage award. In the present case the libelants ask, in effect, that an award heretofore made to the respondent, in full for a salvage service in which they were engaged as cosalvors, shall be distributed in accordance with the rules of the admiralty law. It is true that the amount recovered by the respondent is not in the registry of the court, but that fact does not change the character of the service rendered by the libelants. Whether the services rendered by the libelants were salvage services is a question involving principles of admiralty and maritime jurisdiction. Moreover, if the services rendered were salvage services, then comes another important question as to their value. The court must determine—First, whether the libelant is a salvor, or, what is the same thing, whether a salvage service has been rendered; second, the remuneration to which such salvor is entitled. These questions are obviously characteristic of a salvage suit; and, where a court is called upon to determine such questions, it is manifestly exercising a power conferred by the admiralty and maritime law. In the present case the respondent sets up in his answer that the service rendered the steamer Wellington was a towage, and not a salvage, service; and the court, in the exercise of its admiralty and maritime jurisdiction, determines that it was a salvage service. Next comes the question of remuneration for the service, wherein considerations again arise involving principles of maritime law. Thus, for instance, the libelant may show that he rendered services of such merit or magnitude that his remuneration should be far superior to that of his cosalvors; or respondent, on the other hand, may show that the salvor has impaired or forfeited his right to salvage by disobedience or misconduct during the salvage service, or by waiver of his claim.

There might be some doubt of the jurisdiction of this court if, in the former suit, the court had fixed the amounts to be awarded to the libelants, and the respondent had then received the whole award and converted it to his own use. But such is not this case. The value of the services rendered and the amount to be awarded to each of the libelants are questions yet to be determined, and, from the principles stated, I am of the opinion that they are questions properly within the jurisdiction of this court.

The salvage service rendered in this case consisted, as before stated, in the towage of the steamer Wellington to San Francisco, in which the power and appliances of the steamer Montserrat were the chief factors. The labor of the crew of the latter vessel was but little in excess of what it would have been had the towage serv-

ice not been performed. The services of the libelants were, therefore, not of a high order of merit. Furthermore, it was nearly a year after a decree was rendered in favor of the respondent in the other suit before the libelants brought this action. Such a delay cannot be encouraged. In presenting claims for a salvage service, all the parties in interest should come forward promptly, that the court may consider and determine at one time the merit of the claim of each salvor, and the value of the whole service.

In view of all the circumstances, a decree will be entered in favor of the libelants for $100 each.